## PERRIN, EX PARTE.

1. **BOND FOR COST:** *In misdemeanors covers costs of both courts.*
   When a defendant in a misdemeanor case in a justice's court is acquitted on appeal in the circuit court, the prosecutor and his sureties in the bond for cost are liable for the costs of both courts.

Perrin, ex parte.

2. MISDEMEANORS: *Appeal from J. P. Appeal bond: By whom taken. Supersedeas.*

Since the passage of the act of March 22, 1881, (Acts of 1881, p. 151) the appeal bond in a misdemeanor case in a justice's court must be taken and approved by the justice rendering the judgment, and, together with the original papers and an authenticated transcript of the proceedings, must be transmitted to the circuit court. The taking of the bond stays execution of the judgment, and no supersedeas from the clerk of the circuit court is necessary.

3. APPEAL FROM J. P. *Filing transcript in circuit court.*

It is the duty of the appellant in a misdemeanor case before a justice of the peace to file his appeal bond and the original papers and transcript of the justice docket in the circuit court within sixty days after the rendition of the judgment; but his failure to do so will only be cause for dismissing the appeal on motion of the state and will not deprive the court of jurisdiction to try the case upon a transcript filed after the sixty days but in time for the appeal term of the court.

PETITION for writ of *certiorari.*

*Logan* Circuit Court.

*J. E. Cravens* for the relators.

1. The appeal was not taken under the regulations prescribed by law.. The law prescribed certain regulations for taking an appeal, and it can be taken in no other way. The bond in this case was approved by the justice when it should have been approved and the supersedeas issued by the clerk. *Gantt's Dig.,* sec's. *2104–5, &c.* This law was attempted to be changed by the act March 15, 1879, p. 84, but the first section of this act was declared void in *State v. Devers,* and no sanction has been given to the second section, unless it be in an expression in *Mann v. State, 37 Ark., 400.*

Section seven, act March 22, 1881, undertakes to modify the law in relation to supersedeas in cases of conviction, but is silent as to the mode of appeal, leaving the provisions in Gantt's Digest intact.

2. The appeal was not taken within sixty days, and the circuit court acquired no jurisdiction. *Sec. 2103, Gantt's Dig.; 30 Ark., p. 39.*

Perrin, ex parte.

3. The relators were only bound for the costs before the justice, and the defendant having been convicted, they were discharged. *Act Feb'y. 13, 1838, secs. 56, 82, 83–4; Sec. 2015, Gantt's Dig; Act Jan'y. 20, 1855, sec. 2; Secs. 22 and 42, ch. 52, Gould's Dig.; Gantt's Dig., secs. 1474, 2020–1–2–3–4, 2110.*

The statute must expressly authorize a judgment for costs, costs not being given by the common law. *12 Ark., 60.*

*C. B. Moore*, Attorney General, *contra*.

The questions involved in this case are settled in *Taylor et al v. The State, 39 Ark., 291*, and *Morrison v. State, 40 Ark.*

ENGLISH, C. J.   The transcript returned upon *certiorari* from this court to the clerk of the circuit court of Logan county, shows substantially the following facts.

On the 21st April, 1882, C. T. Perrin filed an affidavit before a justice of the peace of Logan county, charging H. W. Luman with maliciously wounding a mule, the property of Rebecca E. Glover. Whereupon a warrant was issued by the justice, under which Luman was arrested, and gave bail for his appearance on the twenty-fifth of April. On that day Luman appeared, there was a trial of the charge, and the jury failing to agree upon a verdict, were discharged, and by agreement of parties, the case was set for trial again on the second of May, 1882.

Meantime, on the twenty-ninth of April, 1882, Perrin, the prosecutor, filed a bond for costs in the case, with Rebecca E. Glover and W. L. Cravens as sureties.

The dates in the justice's transcript are not in harmony, but it is probable that the case was tried on the second of May, the time agreed on by the parties. The jury found the defendant, Luman, guilty and assessed his punishment at a fine of $20 and the damage done by him to the mule at $10; and judgment was rendered in favor of the state for the

'fine and costs, and in favor of Mrs. Glover, the owner of the mule, for the treble damage assessed by the jury.

On the eleventh of May, Luman prayed an appeal to the circuit court, and upon his giving bond with security, approved by the justice as required by section 7 of the act of March 22d, 1881, (*Acts of 1881, p. 151*), the justice granted the appeal, and a transcript of the proceedings before the justice, together with the original papers, including the appeal bond and cost bond, was filed in the office of the clerk of the circuit court on the third of July, 1882.

At the following September term of the circuit court, to which the appeal had been taken, both parties appearing, and announcing themselves ready for trial, the case was submitted to a jury; and the jury failing to agree upon a verdict, were discharged by consent of parties, and the case continued to the next term.

At the next term (March, 1883,) both parties announced themselves ready for trial, the defendant entered his plea of not guilty, the case was submitted to a jury, the defendant was acquitted, and the court rendered judgment that defendant, Luman, be discharged, "and that the state of Arkansas have and recover of and from C. T. Perrin, principal, and Rebecca E. Glover and W. L. Cravens, securities in the cost bond of said C. T. Perrin, all her costs herein laid out and expended, and that she have execution thereof."

It is to this judgment of the circuit court upon the bond for costs, that Perrin and his sureties sued out the *certiorari* from this court, and upon its return have submitted that the judgment should be quashed as null and void.

I. It is submitted for the relators, that they were only bound upon the cost bond for the costs of the prosecution of Luman before the justice of the peace in the event of his acquittal, and that he having been convicted before the justice, they were thereby discharged from further liability on the bond, though he was acquitted, on appeal, in the circuit

1. BOND FOR COST. In misdemeanors cost of both courts.

court.    That regardless of the result of the appeal, tney were discharged from all liability on the bond by Luman's conviction before the justice.                                    .

Where a prosecutor gives bond for costs (*under sec. 2020, Gantt's Dig.*, in a prosecution for a misdemeanor before a justice of the peace, he and his sureties are liable for all costs which may accrue in the prosecution, in the event of the acquittal of the accused.    Their liability on the bond does not cease on the conviction of the accused before the justice of the peace ; he has the right of appeal, and if acquitted on appeal, the prosecutor and his surities are liable on the cost bond for the costs of both courts.

It was so ruled in *Taylor et al v. State, 39 Ark., 291.*

2. MISDE-
MEANORS.

Appeal
from J. P.

Appeal
bond by
whom ta-
ken.

II.    It is further submitted for the relators that the circuit court acquired no jurisdiction of the case on the appeal of Luman, and therefore could render no judgment on the bond for costs—that the justice of the peace had no power to grant the appeal—that the power was in the clerk of the circuit court, and was not exercised by him.

Under *section 2104 of Gantt's Digest*, when a person convicted of a misdemeanor before a justice of the peace desired to take an appeal from the judgment of the justice, he was required to obtain from the justice a copy of the warrant, &c., and the judgment and a statement of the costs, and file them in the office of the clerk of the circuit court, and cause to be executed, by good security, to be approved by the clerk, a covenant to pay the costs of the appeal in the event of the affirmance of the judgment.

The clerk was required to do nothing to perfect the appeal except to approve the covenant for costs, and that being done, it was his duty to docket the appeal, and issue a certificate of appeal.    *Ib., sec. 2105.*

But if appellant desired to suspend the collection of the judgment, he was required to file with the clerk a further covenant to pay the judgment which might be rendered

against him on the appeal, and thereupon the clerk was authorized to issue a supersedeas, *Ib.*, &c.

Such was the mode of appeal provided for in Gantt's Digest.

But the second section of the act of March 15th, 1879, (*Acts of 1879, p. 84*), which was held in *Morrison v. State, 40 Ark., 448*, to be subject to no constitutional objection, though the first section was, provided: "That any person who shall be convicted of any misdemeanor by a justice of the peace shall have the right of appeal to the circuit court by complying with the law now in force in reference to appeals in criminal cases from the judgment of justices of the peace to the circuit court, and upon the appellant executing bond with approved security in double the amount of the fine and costs, conditioned that the appellant will prosecute his appeal without delay, and if on such appeal the judgment of the justice is affirmed, or if on trial anew judgment is given against appellant, he shall satisfy the judgment, or if his appeal is dismissed he shall satisfy the judgment of the justice with all costs; and no appeal shall be allowed until the execution and approval of such bond."

It was said in *Morrison v. State, supra*, that under this section, appellant had to file a transcript of the judgment etc., of the justice in the office of the clerk of the circuit court as under *section 2104 of Gantt's Digest*, but he could not obtain the allowance of an appeal, or a supersedeas, until he executed bond, with approved security, in double the amount of the fine and costs, conditioned as provided; and that the clerk had to take and approve the bond and issue supersedeas.

The clerk was required to do nothing to perfect the appeal except to take and approve the appeal bond, and that being done, it was his duty to docket the appeal, and issue supersedeas to the justice.

Perrin, ex parte.

J. P. must take the appeal bond.    But by section 7 of the act of March 22d, 1881, (*Acts 1881, p. 151*), the clerk was deprived of authority to take and approve the appeal bond, and the justice rendering the judgment is required to take and approve the bond, the substance of which is prescribed, and transmit it to the appellate court.

No supersedeas to be issued.    Nor, under this act, is there any need for the clerk to issue a supersedeas. The appeal bond when executed and approved by the justice, stays the judgment appealed from. If execution has not been issued, none can be issued. If execution has been issued, the justice can recall or supersede it.

In *Morrison v. State, supra*, it was decided that an appeal bond taken and approved by the clerk, after the passage of this act was invalid, and no judgment could be entered upon it by the appellate court.

But it would be absurd to construe the act to mean that the justice should transmit nothing to the appellate court but the appeal bond. It was no doubt intended that he should transmit with the appeal bond, and other original papers, an authenticated transcript of his docket entries, as was done by the justice in this case.

This makes a simple and convenient mode of appeal from the judgments of justices of the peace in prosecutions for misdemeanors, and is similar to the mode of appeal from their judgments in civil cases.

3. When transcript to be filed in circuit court.    III. It is further submitted that the appeal in this case was not taken within the time prescribed by the statute; and therefore the circuit court did not acquire jurisdiction of the case, for that reason, and had no power to render judgment on the bond for costs against the relators.

*Section 2103 of Gantt's Digest*, provides that, "No appeal shall be taken from a judgment of a justice's court after it has been paid or collected, nor after sixty days from the rendition of the judgment."

No doubt under the code mode of appeal from judgments of justices of the peace in criminal cases, of which this section was a part, when the appellant had to take the appeal by filing in the clerk's office a copy of the judgment, warrant, statement of costs, etc., and execute a covenant for the costs of the appeal, etc., as above shown, the appeal had to be taken in that mode within sixty days from the rendition of the judgment.

And no doubt now, under the changed mode of the appeal, the appellant should not only take the appeal before the justice within sixty days from the rendition of the judgment, but he should see that the transcript of the docket entries, and the original papers, are transmitted by the justice to the appellate court within the sixty days.

In this case, the judgment seems to have been rendered on the second day of May, 1882, and the appeal was taken on the eleventh of the same month, which was in time, but the transcript, etc., was not filed in the clerk's office until the third of July, 1882, which was in time for the appeal term, but was not within the sixty days from the rendition of the judgment.

Had the State moved to dismiss the appeal because not perfected in time, and had appellant shown no sufficient excuse for the delay, the court might have sustained the motion. But no such motion was made. On the contrary, at the appeal term both parties announced themselves ready for trial on the merits, the case was submitted to a jury, they failed to agree on a verdict, and by consent of parties, were discharged, and at the next term appellant was tried, and acquitted as above shown.

Upon all the facts, the circuit court had jurisdiction of the case on the appeal, and the appellant having been acquitted the relators were liable on the bond for the costs of the prosecution, and judgment therefor was properly rendered against them.

We notice a fee bill made out by the clerk, and inclnded in the transcript returned on the *certiorari*, in which the costs are taxed at $205.35. If there are any illegal or exhorbitant items charged in this fee bill, the remedy of the relators is to make application to the court below to retax the costs.

The judgment on the cost bond is affirmed.